UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO M. LOVE, | No. 2:20-cv-0385 JAM DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| SUSAN PERRY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. §1983.  Plaintiff alleges defendant discriminated against him based on his race and religion in violation of his rights under the Equal Protection Clause.  Before the court is defendant's motion for summary judgment.  Defendant argues plaintiff failed to exhaust his administrative remedies before filing this suit.  For the reasons set forth below, this court will recommend defendant's motion be granted.

////

////

////

////

////

1

## BACKGROUND

Plaintiff is incarcerated at the California Correctional Center ("CCC"). He challenges conduct that occurred there in 2019. This case is proceeding on one claim in plaintiff's first amended complaint against defendant Brewer.[1] (ECF No. 11.)

Plaintiff states that he is a Falasha Jew. He alleges that on November 2, 2019, he had a ducat to attend religious services. Correctional Officer Brewer denied plaintiff the right to attend those services, while allowing Native American prisoners to attend their services. Plaintiff alleges Brewer said he had "never seen a Black Jew." Plaintiff seeks damages, declaratory relief, an unspecified preliminary injunction "until procedures in place for the long term," and an order requiring the prison to permit those on a Kosher diet to leave the chow hall to prepare their food.

On screening, this court found plaintiff stated a claim under the Equal Protection Clause against defendant Brewer for discrimination based on plaintiff's race and religion. (ECF No. 12.) Plaintiff was then permitted to choose to proceed on this one claim or to file an amended complaint to attempt to state other claims. He chose to proceed on the equal protection claim against Brewer and the remaining claims were dismissed. (See ECF Nos. 12, 15, 16, 24.)

On June 10, 2021, defendant filed the present motion for summary judgment. (ECF No. 38.) Plaintiff filed an opposition (ECF No. 41) and defendant filed a reply (ECF No. 42).

## MOTION FOR SUMMARY JUDGMENT

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

---

[1] Plaintiff also identified Warden Susan Perry as a defendant in his original complaint. On screening, this court found that plaintiff failed to allege any conduct by Perry that could be construed as a violation of his rights. (ECF No. 8 at 5.) Plaintiff did not include Perry as a defendant in his first amended complaint. Therefore, it is clear plaintiff intended to dismiss Perry from this action. Below, this court recommends her dismissal based on the reasoning of the screening order and her omission by plaintiff from the first amended complaint.

1  moving party may accomplish this by "citing to particular parts of materials in the record,
2  including depositions, documents, electronically stored information, affidavits or declarations,
3  stipulations (including those made for purposes of the motion only), admissions, interrogatory
4  answers, or other materials" or by showing that such materials "do not establish the absence or
5  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
6  support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

7  When the non-moving party bears the burden of proof at trial, "the moving party need
8  only prove that there is an absence of evidence to support the nonmoving party's case." Oracle
9  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).
10 Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,
11 against a party who fails to make a showing sufficient to establish the existence of an element
12 essential to that party's case, and on which that party will bear the burden of proof at trial. See
13 Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
14 nonmoving party's case necessarily renders all other facts immaterial." Id. In such a
15 circumstance, summary judgment should be granted, "so long as whatever is before the district
16 court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

17 If the moving party meets its initial responsibility, the burden then shifts to the opposing
18 party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
19 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
20 existence of this factual dispute, the opposing party typically may not rely upon the allegations or
21 denials of its pleadings but is required to tender evidence of specific facts in the form of
22 affidavits, and/or admissible discovery material, in support of its contention that the dispute
23 exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that
24 is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified
25 complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise
26 from personal knowledge and contain specific facts admissible into evidence. See Jones v.
27 Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.
28 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff

1  "demonstrated his personal knowledge by citing two specific instances where correctional staff
2  members . . . made statements from which a jury could reasonably infer a retaliatory motive");
3  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d
4  407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because
5  it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury
6  pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would
7  an affidavit for the purposes of summary judgment.").  The opposing party must demonstrate that
8  the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
9  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury
10 could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.
11 242, 248 (1986).

12         To show the existence of a factual dispute, the opposing party need not establish a
13 material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be
14 shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."
15 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).
16 Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in
17 order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations
18 omitted).

19         "In evaluating the evidence to determine whether there is a genuine issue of fact," the
20 court draws "all reasonable inferences supported by the evidence in favor of the non-moving
21 party."  Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the
22 opposing party's obligation to produce a factual predicate from which the inference may be
23 drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
24 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing
25 party "must do more than simply show that there is some metaphysical doubt as to the material
26 facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the
27 nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation
28 omitted).

4

## II. Analysis

Defendant argues that the undisputed facts show plaintiff failed to fully exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act ("PLRA"). Plaintiff does not appear to dispute any of the material facts. Plaintiff argues he should be excused from full exhaustion because he sought immediate injunctive relief from the court, the prison could not provide the relief he seeks, the court did not find plaintiff stated a cognizable claim for relief until after the final administrative decision on plaintiff's claim, and plaintiff was uncertain whether his appeal had been received for third level review.

### A. Legal Standards for Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion Requirement

The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting Jones, 549 U.S. at 218)).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for

improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. Id.

**2. California's Inmate Appeal Process**

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). At

the time plaintiff filed his appeals,[2] inmates in California proceeded through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDCR 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. In specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). However, a cancellation or rejection decision does not exhaust administrative remedies. Id. § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested." Id. § 3084.2(a)(4). The appeal should not involve multiple issues that do not derive from a single event. Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

**B. Undisputed Material Facts**

This action is proceeding only on plaintiff's equal protection claim against defendant Brewer. In their briefs, both parties discuss some of the claims raised in plaintiff's first amended complaint that have been dismissed. Those arguments are not relevant to the exhaustion of plaintiff's equal protection claim and are not addressed herein. The following facts regarding the equal protection claim are undisputed.

---

[2] In 2020, California changed the grievance system from a three-tier system to a two-tier system. That change was effective in June 2020, after plaintiff initiated the relevant appeals in the present case. See Cal. Code Regs. tit. 15, § 3480. All citations to the California code in the text refer to the prior law.

- Plaintiff submitted an inmate appeal on form CDCR 602 ("grievance") on November 4, 2019. It was assigned number CCC-M-19-02315. (Defendant's Statement of Undisputed Facts ("DSUF") No. 3, ECF No. 38-3 at 2; Ex. A to Plaintiff's Opposition Brief, ECF No. 41 at 9.)
- In grievance no. CCC-M-19-02315, plaintiff contended that on November 2, 2019, defendant Brewer released a Native American inmate for religious service. However, Brewer refused to release plaintiff, telling plaintiff he had never seen a "Black Jew." Plaintiff argued that Brewer's conduct was discriminatory and violated his constitutional rights. (Id.)
- Grievance no. CCC-M-19-02315 bypassed the first level of review. It was processed as a staff complaint and assigned to a reviewer on November 5, 2019. (DSUF No. 4; ECF No. 41 at 10, 13.)
- The grievance was granted, in part, at the second level, in that there was a confidential inquiry into staff conduct. (Id.)
- The inquiry resulted in a determination that Brewer did not violate policy with respect to plaintiff's allegations. The determination was provided to plaintiff on November 26, 2019. (DSUF No. 4; ECF No. 41 at 10-12.)
- Plaintiff appealed to the Office of Appeals ("OA") on December 7, 2019. The appeal was received by the OA on December 12. (DSUF No. 5; ECF No. 41 at 10, 15.)
- Plaintiff filed this action on February 21, 2020. (ECF No. 1.)
- In a decision issued on March 3, 2020, the OA determined that the allegations were adequately reviewed at the second level and denied the appeal. (DSUF No. 5; ECF No. 41 at 10, 15.)

**C. Discussion**

The undisputed material facts show that plaintiff filed this action prior to the OA's final decision on his grievance. Exhaustion of administrative remedies is not complete until a prisoner has received a final decision. Cal. Code Regs. tit. 15, § 3084.7(d)(3). The federal court must dismiss a suit where the plaintiff has not completed the exhaustion requirement unless plaintiff

8

shows administrative remedies were unavailable to him.  Sapp, 623 F.3d at 822; Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).  To make that showing, a plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1172.  Remedies are "effectively unavailable" where they are "'ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

Plaintiff argues that the exhaustion requirement is inapplicable for several reasons:  (1) he needed to file suit prematurely because he sought immediate injunctive relief; (2) the prison could not provide the relief he seeks; (3) exhaustion was completed before this court found plaintiff stated a cognizable claim for relief; and (4) plaintiff was concerned that his appeal did not reach the OA.  None of these reasons amounts to a showing that administrative remedies were unavailable to plaintiff.

### 1. Need to Obtain Immediate Injunctive Relief

Plaintiff argues that he needed to file a premature complaint because he was seeking immediate injunctive relief.  However, in his original complaint, filed before the OA rendered its decision, plaintiff did not seek immediate injunctive relief.  Rather, plaintiff sought punitive damages, an amendment to California regulations to make them clearer, and provision of a memo to all Jewish inmates describing their rights.  (See ECF No. 1 at 6.)  Plaintiff did not identify any of these requests for relief as requiring immediate action.  Nor did this court consider them to require immediate action.

Plaintiff has not filed any separate motions for preliminary injunctive relief.  Because he did not seek immediate injunctive relief when he filed this action in February 2020, his argument that an emergency forced him to file a premature lawsuit here is baseless.[3]

////

---

[3] In making this finding, this court does not consider whether an attempt to seek emergency injunctive relief prior to a court finding that a prisoner has stated a claim cognizable under § 1983 is legally supported.

9

**2. Prison's Ability to Grant the Relief Sought**

Plaintiff next argues that he should be excused from exhaustion because the prison could not provide the relief he sought. However, the Supreme Court has been clear that the PLRA requires that an inmate "exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth, 532 U.S. at 741 n.6 (citing 42 U.S.C. § 1997e(a)). Plaintiff's argument thus has no legal support and does not provide a basis to excuse him from the exhaustion requirement.

**3. Date Court found Plaintiff Stated a Claim**

Plaintiff makes two related arguments here. First, he contends the relevant date for exhaustion purposes is the date the court found he stated a cognizable claim for relief. Here, that date was after the OA rendered its decision. Second, he contends that the claim against Brewer in the first amended complaint is a new claim and therefore exhausted because he asserted it after the OA rendered its decision.

By its terms, the PLRA is clear that a prisoner's federal lawsuit must be "brought" after the prisoner has exhausted all administrative remedies. 42 U.S.C. § 1997e(a). An action is "brought" when a prisoner provides his complaint to the Clerk of the Court for filing. See Vaden, 449 F.3d at 1050 (citing Ford v. Johnson, 362 F.3d 395, 400 (7th Cir.2004)). Plaintiff's complaint was filed on February 21, 2020. Therefore, it was necessarily submitted to the clerk for filing on or before that date. Nothing in the PLRA, nor any case law cited by plaintiff, permits interpretation of the word "brought" as the date the court finds a prisoner has stated a claim for relief.

Further, the Ninth Circuit has held that exhausting administrative remedies during the course of the federal proceedings does not satisfy the PLRA exhaustion requirement. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also Cox v. Daram, No. 2:20-cv-1295 KJM DB P, 2021 WL 3662392, at *5 (E.D. Cal. Aug. 18, 2021) (recommending dismissal for failure to exhaust and rejecting plaintiff's argument that he need not exhaust his COVID-19 claims because he has been subjected to an ongoing violation of his rights), rep. and reco. adopted, 2021 WL 5852606 (E.D. Cal. Dec. 9, 2021); Giles v. Felker, No. 2:11-cv-1825-WBS-EFB P, 2016 WL

758729, at *5, n.1 (E.D. Cal. Feb. 26, 2016) ("[P]laintiff may not exhaust claims raised in the original complaint after filing and then seek to cure the failure to exhaust by filing an amended complaint."), rep. and reco. adopted, No. 2:11-cv-1825 WBS EFB P (E.D. Cal. Mar. 25, 2016), aff'd, 689 F. App'x 526 (9th Cir. 2017).  Plaintiff's argument that the date this court found he stated a cognizable claim should be considered the date he "brought" this case has no legal support and should be rejected.

Plaintiff's contention that he has exhausted because his amended complaint stated a new claim is not factually supported.  It is true that an inmate may add "new claims" to an amended complaint, as long as they are administratively exhausted before the amendment.  Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir. 2014) (citing Akhtar v. J. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012)).  Because exhaustion is determined on a claim-by-claim basis, the issue here is only whether plaintiff's equal protection claim was "new" when he filed the first amended complaint. See Jones v. Bock, 549 U.S. 199, 223-24 (2007) (each claim must be exhausted).

In his original complaint, plaintiff identified two defendants:  Warden Susan Perry and Correctional Officer Brewer.  Plaintiff alleged that on an unidentified date he had a ducat to attend a Jewish religious service and "officer" refused to permit plaintiff to attend the services. The officer asked "'you're a Black Jew?'"  When plaintiff responded that he was, the officer told him to step back.  Plaintiff then asked the officer if he was violating plaintiff's right to practice his religion.  The officer responded "'Yes I am, I never seen a black Jew.'"  Plaintiff argued that this conduct violated his First Amendment rights.  (ECF No. 1.)  While plaintiff did not specifically identify Brewer as the "officer" in the statement of facts for his claim, that identification was apparent from the fact Brewer was the only officer plaintiff named as a defendant.

In his amended complaint, plaintiff did not allege any new conduct during that interaction. Rather, in the discussion of this claim, plaintiff specifically named Brewer as the officer and the date as November 2, 2019 in his statement of facts.  Plaintiff stated that he had a ducat to attend Jewish religious services.  After Brewer allowed Native American inmates to attend their services, he told plaintiff "he never seen a Black Jew so step back."  Plaintiff contended this

11

conduct violated his rights under the First Amendment and under the Due Process Clause. (ECF No. 11.)

Plaintiff's claim in first amended complaint is not sufficiently dissimilar to the claim in his original complaint to constitute a "new" claim for exhaustion purposes. In Cano, the primary issue addressed by the Ninth Circuit was whether claims arising prior to the filing of the original complaint, but alleged for the first time in an amended complaint, should be considered "new" claims that must have been exhausted prior to filing the amended complaint. Those claims were factually distinct from the claims raised in the original complaint. In the original complaint, plaintiff complained about medical care. In the amended complaint, the plaintiff sought to add a First Amendment claim regarding the provision of Kosher meals and a claim regarding the plaintiff's access to the courts. Both were based on facts not alleged in the original complaint. In fact, the Ninth Circuit did not question whether the First Amendment claims were sufficiently different from the original claims to be considered "new." Cano, 739 F.3d at 1216.

Cases decided after Cano also provide plaintiff no support. In Jones v. Senogor, No. 2:17-cv-1422 KJM AC P, 2021 WL 4991740, at *4 (E.D. Cal. Oct. 27, 2021), the court found the plaintiff's claims in an amended complaint were new because the plaintiff named the defendants for the first time and described their specific conduct for the first time there as well. Similarly, in Toscano v. Adam, No. 16-cv-6800-EMC, 2019 WL 2288281, at *11 (N.D. Cal. May 29, 2019), aff'd, 812 F. App'x 687 (9th Cir. 2020), the court found the plaintiff's claim new where he had only generally alleged problems with his medical care in his original complaint. In his amended complaint, he named the defendant for the first time and identified the specific conduct of that defendant. See also Anderson v. Cox, No. 3:16-cv-0056 RCJ WGC, 2017 WL 3567517, at *7 (D. Nev. Aug. 17, 2017) (plaintiff did not assert a new claim in an amended complaint when he was "merely more particular about which defendants were implicated with respect to each claim"), rep. and reco. adopted, 2017 WL 4172489 (D. Nev. Sept. 20, 2017).

In the present case, plaintiff named Brewer as a defendant in the original complaint. In both complaints, he described the same conduct with the same amount of specificity. Further, plaintiff raised the claim in one grievance. The fact that plaintiff initially identified his claim as

1 arising under the First Amendment and added that it was discriminatory in his first amended
2 complaint does not change the essential nature of his claim. Regardless of the precise
3 constitutional basis for the claim, plaintiff made the same allegations against the same defendant
4 in both complaints.

5       One of the primary purposes of exhaustion is to put defendants on notice of the prisoner's
6 complaint so that they have the opportunity to address it internally. Cano, 739 F.3d at 1219.
7 Here, plaintiff identified Brewer's conduct as discriminatory in his grievance. (See ECF No. 41
8 at 9 ("this is clear discrimination").) He then named Brewer in his original complaint and
9 complained of the same conduct. Brewer thus had notice of plaintiff's claim at the time plaintiff
10 filed that grievance, which was not fully exhausted until after plaintiff brought this action.

11       Courts have found claims to be new when they either identified a previously unnamed
12 defendant, Huckabee v. Med. Staff at CSATF, No. 1:09-cv-0749 DAD BAM PC, 2018 WL
13 4193185, at *13 (E.D. Cal. Aug. 31, 2018) (claim is new when defendants not named in original
14 complaint), rep. and reco. adopted, 2018 WL 4772019 (E.D. Cal. Sept. 30, 2018), or when they
15 alleged conduct distinctly different from the conduct alleged in the original complaint, Toscano,
16 2019 WL 2288281, at *11; Burnett v. Caskey, No. 2:17-cv-1856 KJM KJN P, 2019 WL
17 1130474, at *4 (E.D. Cal. Mar. 12, 2019) (conduct by defendant which was not identified in the
18 original complaint renders claims based on that conduct "new" under Cano). Plaintiff's equal
19 protection claim was not a "new" claim as described in Cano or its progeny. The court should
20 consider the date plaintiff filed the original complaint for exhaustion purposes.

21       **4. Lack of Certainty re Status of Third Level Appeal**

22       Plaintiff's final argument is that he was uncertain about the status of his appeal to the OA
23 and, therefore, felt he needed to file suit. Plaintiff claims that he had problems with the mail at
24 the prison and was concerned that the OA never received his appeal. He alleges he wrote the OA
25 several times to confirm it had received the appeal, but received no reply.

26       Taking plaintiff's allegations of problems with his mail as true, he does not show why he
27 did not wait to find out whether the OA issued a timely decision before filing suit. Plaintiff
28 submitted his appeal to the OA on December 7, 2019. Regulations required the OA to provide

13

plaintiff with a decision within "60 working days." Cal. Code Regs, tit 15, § 3084.8(c). "Working days" are typically considered to be all days except Saturdays, Sundays, and holidays." Joy v. King, No. 2:19-cv-0790 JAM DB P, 2019 WL 5063444, at *6 (E.D. Cal. Oct. 9, 2019), rep. and reco. adopted, 2019 WL 6619291 (E.D. Cal. Dec. 5, 2019). Based on that standard, plaintiff should have expected a decision from the OA by March 6, 2020.[4] The OA provided plaintiff with a decision on March 3, 2020. However, rather than waiting to see if his appeal had been received and considered, plaintiff filed this suit on February 21, 2020.

If the OA had not provided plaintiff with a timely decision either because it never received plaintiff's appeal or because it was dilatory, plaintiff may have been able to argue that administrative remedies were unavailable to him. See Fordley v. Lizarraga, 18 F.4th 344, 355 (9th Cir. 2021) (prison system's failure to respond to prisoner's grievance within time limits may render administrative remedies "unavailable" (citations omitted)). Because the OA's decision was timely, administrative remedies were not "unavailable" to plaintiff.

**D. Conclusion**

The undisputed facts show that plaintiff failed to exhaust his equal protection claim against Brewer prior to bringing this suit. Plaintiff's arguments that he should be excused from exhaustion or that exhaustion should be calculated at the time he filed the first amended complaint have no legal basis and are not based on any material disputed facts. Defendant's motion for summary judgment should be granted based on plaintiff's failure to exhaust his administrative remedies prior to filing suit.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Perry be dismissed from this action based on the reasoning set out in this court's March 26, 2020 screening order and on plaintiff's decision not to include Perry as a defendant in his first amended complaint; and

2. Defendant Brewer's motion for summary judgment (ECF No. 38) be granted.

---

[4] This calculation excludes weekends and the federal holidays on December 25, 2019; January 1, 2020; January 20, 2020; and February 17, 2020. See https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 15, 2022

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB Prisoner Inbox/Civil Rights/ S/love0385.msj fr